IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RALPH AUSTIN, ) | |
| ) | |
| Plaintiff, ) | Case No. 06-125-HO |
| ) | |
| v. ) | ORDER |
| ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff brings this proceeding pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for supplemental security income disability benefits. Plaintiff asserts disability beginning April 24, 2002[1] due to arthritis and difficulty reading. After a

---

[1] Plaintiff notes that the ALJ found the alleged onset date of disability to be November 1, 2002, but that it is in fact April 1, 2002. The court is unable to find, in the transcript pages cited

1 - ORDER

hearing, an administrative law judge (ALJ) determined that plaintiff is not disabled.

Plaintiff contends the ALJ erred in: (1) denying plaintiff's request to cross-examine the authors of an investigative report; and (2) finding plaintiff's cognitive defects non-severe.

A.  Signed Statement in Investigative Report

Plaintiff contends that the ALJ abused his discretion and violated plaintiff's due process rights by denying his request to cross-examine the authors of an investigative report that was damaging to his claim for benefits. The record contains an investigative report conducted as a result of The Olympia Disability Determination Services' note of possible misrepresentation of plaintiff's mental health symptoms. The report contains details of an investigation conducted by Detectives Monteer and Triplett and signed by Monteer. The report notes statements of unidentified witnesses regarding plaintiff's abilities and Monteer's and Triplett's own observations that plaintiff's gait was agile and that he had a bounce to his walk despite plaintiff's complaints of arthritis in his feet and difficulty standing and walking due to pain. Tr. 173-178.

---

by plaintiff, an alleged onset date of April 1, 2002. The Commissioner notes that plaintiff alleged his condition first bothered him on April 24, 2002 (Tr. 74), but the Commissioner agrees that the alleged onset date is April 1, 2002.

2 - ORDER

At the hearing, plaintiff's counsel stated he had not seen a copy of this report until just prior to the hearing and asked for a continuance to deal with the report. The ALJ noted that the case had already been postponed a couple of times and denied the request and stated that he was not making much of the report because there were bigger problems in the file. Tr. 298-300. Plaintiff's counsel requested that the investigators be provided for cross-examination and for identification of the unidentified witnesses. Tr. 301. Again the ALJ stated the statement has some validity like other statements in the record such as that of plaintiff's brother, but that he would not put a lot of weight on it. Plaintiff's counsel then asked for 21 days to supplement the record with additional statements which the ALJ granted. Tr. 301.

Plaintiff contends that the ALJ erred in not postponing the hearing to allow for cross-examination. A claimant in a disability hearing is not entitled to unlimited cross-examination, but rather "such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). The ALJ, therefore, has discretion to decide when cross-examination is warranted. <u>Solis v. Schweiker</u>, 719 F.2d 301, 302 (9th Cir. 1983).

In this case, the report was used by the ALJ as one piece of record support for finding plaintiff to lack credibility. It was not crucial to the ALJ's decision. The investigator of the report stated what he observed at a particular moment and even the ALJ

3 - ORDER

stated, "the fact that he was seen walking in a way that did not reflect a problem, I don't know if he had a good day. I don't know. I am not making much of that." Tr. 300. In his decision, the ALJ referred to the report as casting further doubt on plaintiff's credibility not only because of the observation, but because of the criminal history contained with in it that plaintiff initially failed to acknowledge. Tr. 21. As discussed below, the ALJ cited sufficient clear and convincing evidence for finding the plaintiff to lack credibility even without the challenged observation. Thus, the ALJ did not err in denying a continuance to allow plaintiff's counsel to cross-examine especially in light of the fact that the ALJ left the record open so plaintiff could supplement the record with rebuttal evidence.

B.    Severity of Plaintiff's Cognitive Deficits

Plaintiff contends that the ALJ erred in finding his cognitive deficits non-severe. In this assignment of error, plaintiff challenges the ALJ's assessment of examining physician opinion, plaintiff's symptom testimony and lay witness evidence.

At step two of the disability inquiry, the ALJ must consider the combined effect of all of the plaintiff's impairments on his ability to function, without regard to whether each alone was sufficiently severe. See 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991); Social Security Ruling 868 ("SSR 86-8"). See also SSR 85-28.

4 - ORDER

Also, he is required to consider plaintiff's subjective symptoms, such as pain or fatigue, in determining severity. SSR 88-13; 20 C.F.R. § 404.1529(d)(2)(effective 11/14/91) (adopting SSR 88-13). The step-two inquiry is a de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. at 153-54, 107 S.Ct. at 2297-98. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." See SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(adopting SSR 85-28).

Plaintiff argues that not only should the ALJ have found his cognitive impairments severe, but that they met the Listings because Dr. Caleb Burns assessed plaintiff with a full scale IQ of 52. Tr. 229. The ALJ found the assessment to be of little value because Dr. Burns stated that results of psychological testing should be considered provisional because of plaintiff's uncertain motivation. Tr. 19, 229. Dr. Burns noted a pattern in plaintiff's answers suggestive of intentionally missing questions and that his IQ score may understate his level of cognitive functioning. TR. 230. Dr. Burns also noted inconsistencies in test scores and "theatrical" acting at one point in response to an unheard voice when asked about thoughts of persecution. Tr. 230-31, 227-28. The ALJ also noted that despite plaintiff's very low IQ score, he managed to be employed as a public bus driver. Tr. 21. The ALJ

5 - ORDER

also noted subjective complaints to Dr. Burns that were less than credible such as complaints of seizures. Tr. 21, 225.

While Dr. Burns did report test results of low IQ scores, he also noted that they were only provisional and understated plaintiff's abilities. Tr. 229, 231. This alone is sufficient reason for the ALJ to accord the assessment little weight and when combined with the fact that Dr. Burns relied on plaintiff's discredited subjective complaints as well, provides clear and convincing record support for discounting the IQ scores and opinion of significant cognitive impairment.[2] The ALJ accorded little weight to state disability assessors, who opined as to marked limitations, as well for much the same reason finding them to rely too much on plaintiff's subjective complaints. Tr. 19. The ALJ also noted other medical opinions which suggested plaintiff was not genuine. See, e.g., Tr. 19, 193 (Dr. Eric Goranson states that plaintiff's claims of psychiatric symptoms are non-genuine) Tr. 195.

---

[2] Where an ALJ chooses to disregard the opinion of a examining physician, he must set forth clear and convincing reasons for doing so if the physician's opinion is not contradicted by another doctor. Smollen v Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If the physician's opinion is contradicted by another doctor and the ALJ wishes to disregard the opinion, the ALJ must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id. To meet this burden, the ALJ must set out a detailed analysis and thorough summary of the facts and conflicting clinical evidence, state his interpretation thereof, and make findings. Embrey v Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

6 - ORDER

The ALJ found plaintiff to lack credibility based on numerous inconsistencies throughout the record. Tr. 21. The ALJ noted plaintiff failed to acknowledge most of his convictions and other incidents of criminal activity, ranging from domestic violence to rape, until confronted with records. Tr. 21. Plaintiff also admitted to conviction for robbery and theft. Tr. 309.

The ALJ also noted plaintiff's work history as a public bus driver, laborer, fork lift operator and auto detailer not being effected by his cognitive defects but because of either an argument, assault by a passenger, foot pain, or criminal history. Tr. 21, 303-05, 312, 19, 328. The ALJ notes many other examples of inconsistencies and plaintiff's counsel acknowledges them but argues that "inconsistencies seem to be a pretty consistent occurrence" indicative of confusion demonstrating cognitive deficits. However, the ALJ appropriately may find the inconsistencies to be just that and supportive of credibility problems.

In rejecting a claimant's testimony, the ALJ must perform a two stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage is the Cotton test. Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments

7 - ORDER

and show that the impairment or impairments could produce some degree of the symptoms alleged.  In addition, there must be no evidence of malingering.  A claimant need not show that the impairments in fact did cause the symptoms.  Id. at 1281-82.  The claimant need not produce objective medical evidence of the symptoms themselves or their severity.  Id. at 1282.  Once a claimant produces evidence to meet the Cotton test and there is no evidence of malingering, then the analysis moves to the second stage.

Under the second part of the analysis, the ALJ must analyze the credibility of a claimant's testimony regarding the severity of his symptoms.  The ALJ can reject a claimant's symptom testimony only if he makes specific findings, stating clear and convincing reasons for doing so.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings.  Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).

In determining a claimant's credibility the ALJ may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work

8 - ORDER

>    record and observations of treating and examining
>    physicians and other third parties regarding, among other
>    matters, the nature, onset, duration, and frequency of
>    the claimant's symptoms; precipitating and aggravating
>    factors; functional restrictions caused by the symptoms;
>    and the claimant's daily activities.

Smolen, 80 F.3d at 1284. While plaintiff may interpret the inconsistences as "consistent," the ALJ may appropriately rely on them in his credibility determination.

Plaintiff also notes that plaintiff's wife and brother provided statements with regard to limited mental capabilities. However, the ALJ found some portions of the statements in conflict with plaintiff's own testimony. Tr. 22. The ALJ provided reasons germane to each witness for discounting their statements. Accordingly, the ALJ did not err in finding plaintiff's cognitive deficits non-severe.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed and this proceeding is dismissed.

DATED this   21st   day of   Dec   , 2006.

                                 s/ Michael R. Hogan
                              UNITED STATES DISTRICT JUDGE

9 - ORDER